## THE EMPEROR.

### UNITED STATES *v.* THE EMPEROR.

#### *(District Court, E. D. New York.* February 22, 1892.)

PENALTIES AND FORFEITURES — ILLEGAL DUMPING — ACT OF JUNE 29, 1888 — WHO IS "PERSON OFFENDING" — WHEN TUG NOT "USED OR EMPLOYED" IN VIOLATING ACT.

The act of June 29, 1888, (25 St. at Large, p. 209,) provides that mud shall not be dumped within certain limits around the port of New York; that every person, firm, or corporation engaged in removing mud shall be responsible for its deposit outside of such limits; that for every violation of the law the person offending shall be deemed guilty of an offense against the act; and that any boat used or employed in violating the provisions of the act shall be liable to a penalty. On suit brought to recover such penalty against a tug which, with scows, was on her way to the dumping ground in the usual course, and well out to sea, but still within the prohibited limits, when the scow men, who were in no way connected with the tug, with their own volition, and without the knowledge of those on the tug, and contrary to her captain's express orders, dumped the scows, *held*, that neither was the master of the tug a "person offending," within the meaning of the act, nor was the tug "used or employed" in the illegal act of the scow-men.

In Admiralty. Suit to recover a penalty for illegal dumping. Libel dismissed.

*Jesse Johnson,* U. S. Dist. Atty., for libelant.

*Carpenter & Mosher,* for claimants.

BROWN, District Judge. The above libel was filed under the act of June 29, 1888, c. 496, (25 St. at Large, p. 209,) to recover against the tug Emperor the penalties prescribed by that act for dumping within the prohibited limits certain mud excavated in the North river. The mud had been loaded upon two scows Nos. 19 and 34, belonging to the Morris & Cumming Dredging Company, which after being loaded were made fast to the stake-boat below Liberty island. The steam-tug Emperor, not belonging to that company, was employed to tow the two scows out to sea to the prescribed dumping ground. Between 12 and 1 o'clock on the night of July 25th, she took the two scow-men belonging to the scows from Jersey City, landed them aboard the scows, and then proceeded down the bay with the scows in tow on a long hawser, having previously obtained the permit for dumping as required by the act.

The evidence shows that when the tug took the scow-men aboard at Jersey City, one of them said to the captain of the tug that he would give a whistle or show a light when the scows were dumped. The captain re-

plied that he would have no such thing done; that he had been in trouble before; and that the scows should not be dumped until he gave the usual signals of three or four whistles after he arrived at the dumping ground. While the tug was on the way to the dumping ground in the usual course and well out to sea, but before arriving at the dumping ground, and while within the prohibited limits, the men on the scows, of their own volition and without the knowledge of those in charge of the tug, and without any signal from the tug, and contrary to the captain's previous orders, dumped the loads of mud through the bottom of the scows by drawing the fastenings of the bottom and allowing the mud to fall through in the easy way provided for that purpose. The scow-men were in no way connected with the tug. I must therefore treat the case as one in which the unlawful dumping of the scows was in no respect by the act or volition of the owners of the tug, or of any person on board of her. The question submitted is whether the tug is nevertheless made liable for a violation of the act.

The fourth section of the act of 1888 provides as follows:

"All mud," etc., "excavated from any slip," etc., "and placed on any boat, scow or vessel for the purpose of being taken or towed upon the waters of the harbor of New York to a place of deposit, shall be deposited * * * within such limits as shall be defined and specified, * * * and not otherwise.

"Every person, firm or corporation being the owner of any slip, basin or shoal from which such mud," etc., "shall be taken, dredged, or excavated, and every person, firm or corporation in any manner engaged in the work of dredging or excavating any such slip, basin or shoal, or of removing such mud," etc., "therefrom, shall severally be *responsible* for the deposit and discharge of such mud," etc., "within such limits so defined and prescribed; * * * and for every violation of the provisions of this section the *person offending* shall be guilty of an offense against this act, and shall be punished by a fine equal to the sum of $5 for every cubic yard of mud," etc., "not deposited or discharged as required by this section.

"Any boat or vessel *used or employed in violating any provision* of this act shall be liable to the pecuniary penalties imposed thereby, and may be proceeded against summarily by way of libel in any district court of the United States, having jurisdiction thereof."

The last sentence quoted, though forming a part of section 4, is equally applicable to all sections of the act. The previous parts of section 4 are confined exclusively to violations of section 4. The controverted question is whether the Emperor in this case was "used or employed in violating" the act. It is urged that it should be so regarded, because by the previous language of section 4 it is provided that every person, firm or corporation engaged in removing such mud shall be "*responsible* for its discharge" within the prescribed limits. It is not easy to determine what is the intent of this section as respects the use of the word "responsible;" for the succeeding clause of the same sentence is the only clause that enacts any penalty or consequence of violation; and that clause confines the penalty to the "person offending," and prescribes no punishment or fine except upon the person offending. I think the last clause is a qualification and limitation upon the "responsibility" enacted by the previous clause, in so far at least as to prevent any conviction of

an offense, or any punishment by fine, of any person who is not in some way connected by proof with the performance of the illegal act.

The Emperor in the present case was proceeding in good faith to the prescribed dumping ground. She could not reach it except by first going across the prohibited limits. There was nothing unlawful in her act or intent. Everything that she did was done in the performance of her duty to take the scows to the proper place. She was "used and employed" for that purpose, and for no other purpose. The dumping before reaching the proper place was by no act, omission, or privity of the tug: but by the willful and criminal act of the men on the scows, wholly independent of the tug, and against the express orders of the captain. It seems to me very clear that neither the captain, nor any person on board of the tug, was the "person offending" under the previous sentence of section 4; and that the tug was not "used or employed" in the illegal act of the scow-men. To hold her liable would be to punish the innocent for the guilty; a result never to be reached upon any ambiguous construction of the statute, but only upon its clear and unmistakable meaning. To hold the tug, I must construe the expression used as equivalent to saying that the tug shall be liable for any violation of the act by the scow, or by those on board of the scow, while in tow of the tug; which is certainly a very different and broader expression than that used by the statute. Had this libel been brought against the scows themselves, instead of the tug, it might have been urged with much more force that the scows were "used or employed" in violating the act; because the mud was loaded upon the scows, and because it was directly by means of unfastening the bottom of the scows that the mud was dropped into the sea within the prohibited limits. But that was not the purpose for which the tug was used or employed, nor was it by any act or omission of hers. She was used and employed to take the scows to the proper dumping ground and was faithfully performing that duty and could not go in any other way. The illegal act was done independently of her, and outside of the scope of her "use and employment;" and I must, therefore, dismiss the libel.