## JAYCOX et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

No. 95.

1. STATUTE FORBIDDING DEPOSITS IN NEW YORK HARBOR—VIOLATIONS—LIA-
BILITY OF MASTER OF TOWBOAT.

Act June 29, 1888, as amended (1 Supp. Rev. St. 594; 2 Supp. Rev. St.
249), forbidding injurious deposits in New York Harbor and adjacent
waters, provides (section 3) that the master of the towboat, or person
acting as such, depositing such matter shall be liable to equal punish-
ment "with the master of the scows for dumping prohibited matter in
any place other than that specified in the permit." *Held*, that the fact
that the master of a tow boat engaged in towing scows laden with ref-
use was asleep when a forbidden act was committed would not relieve
him from liability.

2. SAME—CONSTITUTIONALITY.

The act is not unconstitutional because it makes the master of a tug-
boat criminally liable for the forbidden acts of his associates in the
course of their general undertaking, though he may be innocent of crim-
inal intent, since the maxim that crime proceeds from a criminal mind
does not apply to statutory offenses.

3. SAME—PROSECUTION—INDICTMENT—MOTION TO DISMISS—MISJOINDER OF DE-
FENDANTS.

A motion to dismiss, as to each defendant, an indictment under such
act against several defendants, who it alleged aided and abetted in the
act of dumping in violation thereof, made on the ground that they were
improperly joined, was properly overruled, since, the act being a misde-
meanor, all were principals, and the indictment consequently charged a
joint offense.

4. SAME—CONSTRUCTION—INSTRUCTIONS—DEFENSE—NEGLIGENCE OF SCOWMEN.

The concluding clause of section 3 of the act, that "neither defects in
machinery, nor avoidable accidents to scows or tug-boats, nor unfavor-
able weather, nor improper handling or moving of scows or boats of any
kind whatsoever, shall operate to release the owners and masters," by
implication absolves masters of towboats and scows from criminal re-
sponsibility for violations caused by unavoidable accidents, but not from
those caused by negligence or ignorance of the employés of the scows;
and hence, in a prosecution thereunder, there was no error in instructing
that failure of scowmen to observe the signals of the towboat did not
exonerate any of the defendants.

In Error to the Circuit Court of the United States for the Southern
District of New York.

Edward G. Benedict, for plaintiffs in error.
Wm. S. Ball, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiffs in error were convicted
on an indictment charging them with the violation of the statute of
congress of June 29, 1888, as subsequently amended (1 Supp. Rev.
St. 594; 2 Supp. Rev. St. 249), entitled "An act to prevent destructive
and injurious deposits within the harbor and adjacent waters of New
York City, by dumping or otherwise, and to punish and prevent the
offences." No question is made as to the sufficiency of the indict-

ment, but the assignments of error challenge some of the rulings of the court upon the trial.

The statute (section 1) forbids the discharging or the "depositing by any process or in any manner" of refuse, etc., in the tidal waters of the harbor of New York, or its adjacent or tributary waters, or in those of Long Island Sound, "within the limits which shall be prescribed by the supervisor of the harbor," and makes the act a misdemeanor. It declares (section 2) that "any and every master and engineer, or person or persons acting in such capacities respectively, on board of every boat or vessel, who shall knowingly engage in towing any scow, boat or vessel loaded with any such prohibited matter to any point or place of deposit or discharge" in the waters mentioned "elsewhere than within the limits defined and permitted by the supervisor of the harbor," shall be deemed guilty of a violation of the act, and be punishable as therein specified. It declares (section 3, as amended) that upon receiving on board of any scows or boats such prohibited matter it shall be the duty of the owner or master, or person acting in such capacity, on board of scows or boats, before proceeding to take or tow the same to the place of deposit, to apply for and obtain from the supervisor of the harbor a permit defining the precise limits within which the discharge of such scows or boats may be made. The section further provides as follows:

"And any deviation from such dumping or discharging place specified in such permit shall be a misdemeanor, and the owner and master, or person acting in the capacity of master, of any scows or boats dumping or discharging such forbidden matter in any place other than that specified in such permit shall be liable to punishment therefor as provided in section one of the said act of June 29th, 1888; and the owner and master, or person acting in the capacity of master, of any tug or tow-boat towing such scows or boats shall be liable to equal punishment with the owner and master, or person acting in the capacity of master, of the scows or boats; and, further, every scowman or other employee on board of both scows and tow-boats shall be deemed to have knowledge of the place of dumping specified in such permit, and the owners and masters, or persons acting in the capacity of masters, shall be liable to punishment, as aforesaid, for any unlawful dumping, within the meaning of this act or of the said act of June 29th, 1888, which may be caused by the negligence or ignorance of such scowman or other employee; and, further, neither defect in machinery nor avoidable accidents to scows or tow-boats, nor unfavorable weather, nor improper handling or moving of scows or boats of any kind whatsoever, shall operate to release the owners and masters and employees of scows and tow-boats from the penalties hereinbefore mentioned."

It appeared upon the trial that on a trip to the dumping grounds on the night of March 6, 1900, Jaycox being the master of the towboat, Wold the master of the scow No. 10, and Knudsen the master of scow No. 34, the two scows dumped their refuse in the harbor before reaching the dumping grounds specified in their permits. There had been no deviation upon the voyage. Jaycox had instructed the masters of the scows that when the dumping ground was reached the tug would give the scows a dumping signal of four whistles. The masters of the scows mistook a different signal given by the towboat—a signal of three whistles, which had been agreed upon as indicating a given maneuver—as a four-whistle signal for dumping, and it was in consequence of this mistake that the dumping took place within the

prohibited locality. At the time Jaycox himself had gone to bed, leaving the mate of the towboat in charge of her navigation.

The assignments of error present, among others, the question whether Jaycox was guilty of offense. The third section of the statute prescribes that the master of the towboat, or person acting in the capacity of master, shall be liable to equal punishment "with the master of the scows for dumping prohibited matter in any place other than that specified in the permit." Jaycox was master of the towboat, and the fact that he was asleep, and therefore not actively managing her navigation at the time when the forbidden act was committed, cannot relieve him, in view of the explicit language of the statute. The mate was not even acting in the capacity of master. He was at the time subject to the commands of Jaycox.

It is urged in behalf of Jaycox, as well as in behalf of the other defendants, that the statute is beyond the constitutional power of congress if it is to be construed as making a person who is innocent of criminal intent criminally liable for the act of another. We are aware of no authority supporting the proposition that the presence of a criminal intent is an essential element of a statutory offense. In the words of Chief Justice Beasley (Halsted v. State, 41 N. J. Law, 552, 592):

"Nothing in law is more incontestable than that, with respect to statutory offenses, the maxim that crime proceeds from a criminal mind does not universally apply. The cases are almost without number which vouch for this."

See Reg. v. Tolson, 23 Q. B. Div. 168; Beckham v. Nacke, 56 Mo. 546; Com. v. Raymond, 97 Mass. 567; State v. Steam Co., 13 Md. 181; Com. v. Finnegan, 124 Mass. 324.

The statute does not make any person criminally liable for an act committed without his participation. The participation of the master of the towboat and the masters of the scows is found in the circumstance that they are assisting in the general undertaking in the course of which the forbidden act is done. Neither one of them is under any obligation to engage in such an enterprise, and, if he chooses to engage in it, he does so at the peril of incurring criminal responsibility if it is not pursued lawfully; and no principle of natural justice is violated by a statute which makes him responsible for the conduct of his coadjutor. The statute, in effect, says to the masters of the vessels, "If you wish to assist in dumping refuse, you must do so at the risk of criminal responsibility for the acts of your associates as well as for your own." The statute is a severe one, but this does not militate against its validity. Its stringency may be necessary to compel all those who engage in dumping refuse within the waters specified to see to it beyond peradventure that the regulations of the statute are complied with.

In People v. Roby, 52 Mich. 577, 18 N. W. 365, under a statute requiring all bars at which liquor was kept for sale to be closed on Sundays, the proprietor of a hotel was convicted upon proof that his clerk, in his absence, sold one glass of liquor at the bar, without any evidence of his complicity in the opening of the bar on that day, or that he expected or desired that it should be opened; and the conviction was upheld. Cooley, C. J., observed:

"Many statutes which are in the nature of police regulations—as this is—impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

In Noecker v. People, 91 Ill. 494, the proprietor of a liquor store was convicted for a sale by his agent in violation of his instructions. Such adjudications illustrate the constitutional validity of statutes subjecting persons to criminal responsibility for the acts of others in the same general employment, in the absence of participation in the particular act, and in the absence of guilty intent.

Error is assigned of the refusal of the court to dismiss the indictment upon the motion of the defendants. The motion was to dismiss the indictment "as to each defendant upon the ground that they are improperly included in the indictment," and was made before any evidence had been introduced. It is the apparent meaning of the statute that the unlawful act of the scowmen shall be regarded as the act of the master of the towboat if committed upon the dumping voyage, and consequently as one and the same offense. Whether the act of one scowman is to be regarded as the act of another when both do not participate in committing it is a more doubtful question, and we are not called upon in the present case to decide it. The rule of law is that, when an offense is such that several may join in it, all or any number of those who do join in it may be indicted, either jointly or separately. But where the offense is such as not to permit of participation or agency, several offenders cannot be joined,—as for perjury, or for seditious or blasphemous words, or the like; because such offenses are in their nature several. Even where the indictment joins several defendants, the charge is several as well as joint, and judgment can be rendered against one or more, notwithstanding the others are acquitted. The indictment upon its face alleged that all the defendants aided and abetted in the act of dumping. If the averments were true, as the act was a misdemeanor, all were principals. The indictment consequently well charged a joint offense, and it was not error to deny the motion. If the motion had been based upon the evidence introduced, the government might have been put to an election as to which one of the two scowmen it would dismiss the indictment. U. S. v. McDonald, 3 Dill. 544, Fed. Cas. No. 15,670. If the statute should be construed as not treating the act of one scowman as that of the other, nevertheless the evidence justified the conviction of the towboat master and one of the scowmen.

Error is assigned of the instruction of the trial judge to the jury to the effect that the failure of the scowmen to observe the signals of the towboat did not exonerate any of the defendants from criminal responsibility. The concluding clause of section 3, "neither defects in machinery, nor avoidable accidents to scows or towboats, nor unfavorable weather, nor improper handling or moving of scows or boats of any kind whatsoever, shall operate to release the owners and masters," by implication absolves the masters of towboats and scows from criminal responsibility for violations of the statute caused by unavoidable accidents, but not from those caused by negligence or ignorance of the employés of the scows. The instruction to the jury

was correct, and the trial judge properly refused the various instructions requested in behalf of the defendants in qualification thereof.

We find no error in the record, and the judgment of conviction is affirmed.