## SCOW NO. 36.

## NEW ENGLAND DREDGING CO. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit; March 9, 1906.)

No. 590.

**1. NAVIGABLE WATERS—DEPOSITING REFUSE IN—LIABILITY OF VESSEL.**

Act March 3, 1899, c. 425, §§ 13, 16, 30 Stat. 1152, 1153, [U. S. Comp. St. 1901, pp. 3542, 3544], prohibiting the deposit of refuse matter in any of the navigable waters of the United States, and making any vessel used in such illegal act liable for the pecuniary penalties imposed therefor, were enacted in the exercise, for the public good, of the police powers inherent in the government, and a vessel so used is subject to such penalties, although the act was without the knowledge or intent of her owner and contrary to his general instructions.

**2. SAME.**

Where the person placed in charge of a scow by the owner, for the purpose of dumping her load, in the business in which she was used, and in which the owner was engaged, discharged such load into the waters of a harbor, in violation of Act March 3, 1899, c. 425, § 13, 30 Stat. 1152 [U. S. Comp. St. 1901, p. 3542], such act was in a sense within the scope of his employment, although contrary to the owners general instructions, and the scow was "used" for the unlawful purpose, within the meaning of section 16 of the act, and subject to the penalty thereby imposed.

Appeal from the District Court of the United States for the District of Massachusetts.

Edward E. Blodgett (Eugene P. Carver, on the brief), for the appellant.

William H. Garland, Asst. U. S. Atty. (Melvin O. Adams, U. S. Atty., on the brief).

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This was a libel in rem against Scow No. 36, by the United States, to recover the pecuniary penalty provided by sections 13 and 16 of the act of March 3, 1899, c. 425, 30 Stat. 1152, 1153 [U. S. Comp. St. 1901, pp. 3542, 3544], which declares it to be unlawful to discharge refuse matter into navigable waters of the United States.

The scow in question belonged to the New England Dredging Company, and was loaded with dredged material which was discharged by the voluntary act of the scowmen in charge into waters of the United States covered by the statute to which we have referred. The act of the scowmen was without orders from the owner, the person in charge of the dredge, or the captain of the tugboat, and contrary to general instructions not to discharge without orders, and there was no evidence as to his motive for the act.

The contention of the United States upon the question of the liability of the vessel was sustained in the District Court by Judge Lowell with some doubt, and the case is here on appeal.

If the view of the United States is upheld, it is by virtue of the modern body of law, existing in this country, as well as in England, which is founded upon the arbitrary but necessary police power inherent in government, rather than upon general principles which govern in other cases.

This exceptional rule, founded largely upon statutes enacted for the enforcement of the plenary power in government, is recognized as applying to violations of the revenue laws, situations involving municipal exigencies (California Reduction Co. v. Sanitary Reduction Works, 26 Sup. Ct. 100, 50 L. Ed. ——; Gardner v. People of State of Michigan, 26 Sup. Ct. 106, 50 L. Ed. ——), and a variety of conditions relating to the public health and the public good.

As to wrongs within this rule, the penalty is supposed to attach to the offending act without regard to the question of willfulness or intent, and without regard to the question of mistake or innocence. The rule is, of course, in derogation of the principles of the common law, and its drastic quality is justified upon grounds of necessity, and as in the interest of the public good.

The expressed object of resorting to the exercise of plenary power through arbitrary and exceptional remedies in such matters, is to better safeguard the public good in situations where the public good is easily subject to imposition and injury through heedless, inadvertent, or indifferent violations of laws enacted for the general welfare, and such remedies are enforced even in respect to certain of the lower statutory crimes and misdemeanors as well as in a limited class of cases involving civil conditions.

Wills, J., in Reg. v. Tolson, 23 Q. B. Div. 168, 172, 173, in speaking of this exceptional and somewhat recent rule created to meet the demands of modern necessities and in describing the reasons for the rule and its scope, says:

"The acts are properly construed as imposing the penalty when the act is done, no matter how innocently, and in such a case the substance of the enactment is that a man shall take care that the statutory direction is obeyed, and that if he fails to do so he does it at his peril."

Again:

"A statute may relate to such a subject-matter and may be so framed as to make an act criminal, whether there has been any intention to break the law or otherwise to do wrong or not. There is a large body of municipal law in the present day which is so conceived."

Judge Cooley, in People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270, says:

"Many statutes which are in the nature of police regulations. as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

See, also, Noecker v. People, 91 Ill. 494.

The power of the federal government over the navigable waters of its ocean harbors is absolute, general, and without limitations, except such as are prescribed by the Constitution; and, in the exercise of such power in the interest of and for the protection of commerce, it may well prescribe the manner in which the harbors shall be used; and, in the interest of sanitation and health, and of the general welfare, it may well protect its public waters from pollution.

Absolute power thus existing as an inherent element of sovereignty, it only remains to inquire whether it was intended that the statute in question should operate upon a vessel used in the illegal act of discharging refuse matter into prohibited public waters by a person in charge of her, in the absence of intentional or willful wrong on the part of the owner, and against his general instructions.

The Supreme Court has treated revenue laws imposing a penalty as remedial rather than penal in the sense that requires strict construction (Taylor v. United States, 3 How. 197, 210, 11 L. Ed. 559; Cliquot's Champagne, 3 Wall. 114, 145, 18 L. Ed. 116; Lewis' Sutherland on Statutory Construction, § 535, and notes), and has enforced the penalty as attaching to the offending property, notwithstanding the fact that the owner did not participate in the unlawful act, and that he had no knowledge of an intended violation of the law. Dobbin's Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637; United States v. Two Bay Mules, 36 Fed. 84; United States v. One Black Horse (D. C.) 129 Fed. 167.

Statutes enacting such stringent remedies are upheld by the courts, because of the manifest purpose of Congress, in view of the opportunities for fraud, to treat the property as the offender, and because they are intended to prevent fraud, suppress public wrong, and promote the public good.

In admiralty the vessel has often been held responsible for unlawful acts of persons in charge committed without the knowledge and against the instructions of the owner. The Palmyra, 12 Wheat. 1, 14, 6 L. Ed. 531; United States v. Brig Malek Adhel, 2 How. 210, 234, 235, 11 L. Ed. 239; Dobbin's Distillery v. United States, 96 U. S. 395, 399–403, 24 L. Ed. 637. See, also, cases cited in notes to Desty's Shipping and Admiralty, § 413; The Vrouw Judith, 1 Rob. Adm. 150; The Adonis, 5 Rob. Adm. 256; The Mars, 6 Rob. Adm. 87.

It is said by Mr. Justice Clifford in the Dobbin's Distillery Case, 96 U. S. 395, 400, 24 L. Ed. 637, that:

"It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offense has been committed, as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof, the necessity of the case requiring it as the only adequate means of suppressing the offense or wrong, or of insuring an indemnity to the injured party."

In the same line it is observed in The Palmyra, and in other cases, that there may be a forfeiture in rem under circumstances where no penalty would attach in personam. It is quite apparent that, both in this country and in England, more stringent and comprehensive remedies are recognized as existing against vessels than against owners. This is doubtless upon the ground that the vessel with its own force and power is capable of doing injury, and is so far at large and beyond the control of the owner that it may become an independent offender against the law.

It is also quite apparent that the law-making power in framing the statute in question had regard to the distinction between the principles which govern admiralty forfeitures in rem and the principles which govern in proceedings to impose a penalty in personam against the owner. Section 16 of the act in question, in declaring the personal punishment, uses well-known common-law terms:

"Every person and corporation that shall violate or shall knowingly aid * * * shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine, * * * every master * * * who shall knowingly engage * * * or who shall willfully injure or destroy * * * or who shall willfully obstruct * * * shall be deemed guilty * * * and shall upon conviction * * * be punished."

—thus unmistakably recognizing and intending tests of criminality which exist under general rules in proceedings against persons charged with misdemeanors; while, in declaring the liability of an offending vessel, the question of liability is not made to depend in any way upon the elements of knowledge, willfulness or intention. This, we think, is significant and quite controlling upon the question of the intended purpose of the statute.

Another objection urged is that this is not a case where the vessel was "used" for an unlawful purpose within the meaning of the statute. The person on board the scow was placed there by the owner, and was in charge of her, and was there for the purpose of dumping the load which she was supposed to carry in the business in which she was used and in which the owner was engaged, and, while the service which the scowman was expected to perform was not performed in accordance with instructions, the wrongful act in question was in a sense within the scope of his employment, because he was in charge of the scow for the purpose of discharging its load. At least, his relation to the scow was not such as would exist in a case where a vessel, or a vehicle, had been taken without leave, and where the possession was wholly without authority and wrongful. The scowman was placed there to do the work of the owner, that of discharging the vessel's load, and under such circumstances the offending vessel should be treated as used in violation of the act of Congress in question.

There are several cases in the second circuit based upon a similar statute for the protection of New York harbor. Among them is The Anger Head (D. C.) 46 Fed. 664, which is not in point because there the ordinary employé was in no sense in charge, and was not put there by the owner to dump refuse matter. Neither is The Emperor (D. C.) 49 Fed. 751, in point, for the reason that the proceeeding there was against the tug, which was in no way connected with the wrongful act of the scow or scowmen.

The Bombay (D. C.) 46 Fed. 665, which distingishes itself from The Anger Head because the ashes were caused to be dumped by some person in charge, though not the owner, holds the vessel liable as having herself violated the law.

In Jaycox v. United States, 107 Fed. 938, 47 C. C. A. 83, the proceeding was by indictment against the master of a towboat who had no knowledge of the wrongful act of the scowmen. Subsequent to the earlier cases relating to New York harbor, to which reference has already been made, and previous to the wrongs complained of in the Jaycox Case, the statute for the protection of that harbor was made more stringent by amendment, and the statute in its amended form apparently undertook to discard knowledge and intent as elements of the offense in proceedings for penalties in personam. The judgment of conviction was sustained in that case upon the ground that intent was not an essential element of such a statutory offense, and that the participation of the master of the towboat and the masters of the scows was found in the circumstance that they were assisting in the general undertaking in the course of which the forbidden act was done. The reasoning of that case, upon a more stringent statute than the one now under consideration, though exceedingly useful in its bearing upon legislation relating to the subject of harbor protection, goes far beyond what is necessary for us to decide. Here the proceeding is in rem, and the vessel is sought to be held as the offending force.

In view of the evident purpose of the government to better safeguard its harbors in the interests of commerce and of the public good, it seems clear that the statute under consideration was intended to impose upon offending vessels the consequences flowing from wrongful acts of persons in charge, without regard to the knowledge or intent of the owner, and we have no doubt of the power of Congress to declare a penalty of the character in question.

The judgment of the District Court is affirmed.