## THE PILE DRIVER NO. 2.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

### No. 84.

NAVIGABLE WATERS ⟨⊙⟩19—DEPOSITING REFUSE IN—LIABILITY OF VESSEL.

Under Act March 3, 1899, c. 425, §§ 13, 16, 30 Stat. 1152, 1153 (Comp. St. 1913, §§ 9918, 9921), which provides that, with certain exceptions, "it shall not be lawful to throw, discharge or deposit * * * from or out of any ship, barge, or other floating craft of any kind, * * * any refuse matter of any kind, * * * into any navigable water of the United States," and which makes any vessel or other craft "used or employed in violating" such provision liable for the penalties imposed therefor, where a pile driver and a catamaran alongside, containing piles, were being used together in repairing a ferry rack in North River, the action of one of the pile driver crew in cutting off the ends of piles on the catamaran, which were too long for use, and throwing such ends into the river, was a violation of the act, for which the pile driver is liable.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 59–63, 67–72.]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the United States against the New York Central and Hudson River Railroad Pile Driver No. 2; the New York Central & Hudson River Railroad Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

This action was brought in rem under the act of March 3, 1899 (30 Statutes at Large, 1151–1155), entitled "An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes."

The following is the opinion of Hough, District Judge, in the court below:

The pile driver proceeded against was engaged in repairing the ferry rack at the foot of Forty-Second street, New York City. The repairs consisted (inter alia) in driving in new piles. The material for this purpose was in or on what is called a "catamaran," viz. a framework or container within which piles could lie until seized on by the pile driver and elevated into place for driving. The pile driver and the catamaran are entirely distinct, but for the purpose for which they were used at the time neither was of any value without the other. Nor, indeed, was the catamaran itself of any use without piles either in it or on it. Some of the piles were longer than was necessary, whereupon a member of the pile-driving crew cut off their ends with an ax

---

⟨⊙⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and let the unwanted ends float out into the river; one at least of the same being a piece of timber 12 or more feet in length. Such a thing constitutes a most dangerous menace to ships navigating with the aid of propellers.

Section 13 of the act declares "that it shall not be lawful to * * * deposit, or cause, suffer, or procure to be * * * deposited either from or out of any ship, barge, or other floating craft of any kind," any "refuse matter of any kind or description whatever other than that flowing from streets and sewers * * * into any navigable water of the United States." The unwanted ends of piles are clearly refuse matter, and the act of the member of the pile driver's crew in permitting them to float off is a violation of the statute.

I have no doubt that the violation was intentional. This statement is made after listening to the testimony of all the members of the pile driving crew, who probably never heard of this act. It seems that they intended to do what they did. This action, however, is brought in rem under section 16 of the act, which declares that "any * * * craft used or employed in violating any of the provisions of section 13 * * * of this act" shall be liable to be proceeded against "summarily by way of libel."

The whole question is, therefore, whether the pile driver, as distinct from the catamaran, was used or employed in the violation of section 13, which consisted in the act of a member of the pile driver's crew in casting adrift from the catamaran unwanted ends of piling. It seems to me quite clear that the pile driver, the catamaran, and the logs were all being used and employed in one single job, namely, repairing the Forty-Second Street ferry rack, and that if in the process of executing those repairs the human beings who were executing the work and managing all the property required therefor throw refuse matter in the river, then all the boats or other craft (i. e., pile driver and catamaran) employed on the job were used in the violation of the statute. It is true that the punishment inflicted by the act on such a trifling offense as this is grotesquely severe; but that ought not to affect one's views of a statute.

Of course, it often does affect the judicial view of statutes, as may be seen by a comparison of the cases of The Anjer Head (D. C.) 46 Fed. 664, and The Bombay (D. C.) 46 Fed. 665. Of these two cases, I think the decision of Judge Benedict in The Bombay is the proper method of construing the earlier act out of which this statute grew. I am also of opinion that the reasoning of Dodge, J., in The Scow No. 9 (D. C.) 152 Fed. 548, in relation to this particular act, compels decision against claimant.

Libelant may take a decree for $500, without costs.

Alex S. Lyman and Jacob Aronson, both of New York City, for appellant.

H. Snowden Marshall, U. S. Atty., and John Hunter, Asst. U. S. Atty., both of New York City, for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The act in question provides, in section 13, as follows:

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, * * * any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States."

The facts are fairly stated in the opinion of the District Judge and need not be repeated here. The testimony and admissions of the claimant clearly established the following propositions: First. On the day in question the pile driver was engaged in repairing the ferry rack

on the south side, at the foot of West Forty-Second street, New York. Second. Lying alongside the pile driver was a raft containing piles which were too long for use and a man was engaged there in cutting them off and shoving the discarded ends into the river. Third. This was done in three instances. He was then hailed by an inspection boat and the third piece was hauled back on the raft. Fourth. The two pieces first thrown overboard were picked up by the patrol boat, one piece being about 50 feet and the other about 150 feet distant from the raft. These discarded pieces were, respectively, about 20 feet and 13 feet long and 7 inches in diameter. Clearly these timbers were or might become a serious menace to navigation. Floating about in the crowded waters of the harbor of New York, in the night as well as during the day, they might easily be caught by the propeller wheels of vessels, thus endangering life as well as property. Unquestionably they were deposited in the water of the harbor by the agents and servants of the appellant. The catamaran on which the piles lay and the pile driver were both engaged in the same business of repairing the ferry rack. They were so near that a person could step from one to the other. It also appears that the man who threw overboard the obstructions complained of was a member of the pile driver's crew and was acting under orders from the foreman in charge of the work. The construction urged by the appellant that the raft or catamaran and not the pile driver is liable, would emasculate the statute and make the enforcement thereof difficult if not impossible. It would only be necessary to carry the discarded pieces to a floating platform moored to the pile driver, and cast them overboard from there, in order to escape liability. The case is clearly distinguishable from U. S. v. Emperor (D. C.) 49 Fed. 751, where Judge Brown says:

"The dumping before reaching the proper place was by no act, omission, or privity of the tug; but by the willful and criminal act of the men on the scows, wholly independent of the tug, and against the express orders of the captain. It seems to me very clear that neither the captain nor any person on board of the tug, was the 'person offending.' "

In the present case the entire enterprise was under the direction of those in charge of the pile driver. The raft was merely an auxiliary platform, so to speak, because there was no place for the piles on the driver. The man who threw them overboard was a member of the crew of the pile driver, the catamaran had no crew and could not act independently of the pile driver. We think the doctrine of The Bombay (D. C.) 46 Fed. 665, is applicable to the present situation.

The decree is affirmed with costs.