## THE COLUMBIA.

### THE NO. 28.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

#### No. 82.

NAVIGABLE WATERS ☞14(3)—OBSTRUCTION BY DUMPING—STATUTORY PENALTY.

The owner of a towing tug and scow is not relieved from the penalty for dumping before reaching the prescribed dumping ground, in violation of Act June 29, 1888, § 3, as amended by Act Aug. 18, 1894, § 3 (Comp. St. 1916, § 9935), on the ground of avoidable accident or unfavorable weather, where the cause was the blowing out of a gasket on the tug, causing it to stop, and the scowman dumped his load to avoid swamping in a heavy sea, where the gasket was an appliance requiring frequent examination, but was not shown to have been recently inspected.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the United States against the steamtug Columbia and dumper scow No. 28; the Coastwise Dredging Company, claimant. Decree for claimant, and the United States appeals. Reversed.

Action was brought to recover (as liens upon the boats proceeded against) the penalties provided by the Act of June 29, 1888, c. 496, § 3, 25 Stat. 209, as amended August 18, 1894 (28 Stat. 360, c. 299, § 3 [U. S. Comp. Stat. § 9935]),

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for illegally dumping material laden on scow No. 28, which was towed out of New York Harbor and toward the dumping ground by tug Columbia.

Tug and scow belonged to the same owner, and it was admittedly the duty of the tug to take the scow "to a point not less than three nautical miles southeast of Scotland Lightship, with Ambrose Channel Light vessel bearing N. E. by N. (magnetic)," and there cause the scow to dump "in not less than fifteen fathoms of water."

The following questions arose upon the trial: (1) Was the scow as a matter of fact dumped before it got to the dumping grounds? (2) Was the dumping, if unlawful, caused by unavoidable accident? or (3) unfavorable weather?

It was testified by the master and mate of the United States patrol boat that they saw the scow dumped not over three-quarters of a mile from Scotland Light. These witnesses were wholly unimpeached. The master and mate of the tug gave evidence to the effect that, with the wind forward of the beam and the sea rough, the Columbia had been under way long enough (judging by her past performances) to arrive at the dumping ground. These men made a written report of the dumping to their owners, but did not therein advance this statement.

Having reached the approximate region (wherever that was) of the dumping, the tug became disabled—it "blowed a gasket out" of the air pump used to "maintain a vacuum in the condenser." This vacuum is created "so the engine can have a clear exhaust and develop her horse power," and if the air pump is not in operation and the vacuum is not maintained "the exhaust steam from the engine is not being subtracted from the condenser and the steam is thrown right down in the pipes more and more—the pressure gets greater and greater in the condenser, and it is liable to bursting."

As soon as this accident happened the engines were stopped, the tug and tow rolled in the trough of the sea, the waves broke over the heavily laden scow, the sea was increasing, and the scowmaster dumped his boat, because, in the opinion even of the master of the United States patrol boat, who witnessed the operation, "it would have been unwise for him to hold the load much longer," because his life was in danger. The scowmaster himself disappeared before trial and did not testify. The licensed officer in charge of the Columbia at the time gave it as his opinion that if the tug had not broken down the tow could have proceeded, and the scow's difficulties were occasioned by getting "in the trough of the sea and [rolling] to one side and the other," so that when "the sea goes over him it is liable to open the seams."

The trial court held (1) that dumping was not proven to have taken place on forbidden ground; (2) the accident to the tug was unavoidable; (3) that sufficiently unfavorable weather was shown to excuse the act of the scowmaster, and therefore (apparently on all three of these grounds) dismissed the libel, whereupon this appeal was taken.

Francis G. Caffey, U. S. Atty., of New York City (John Hunter, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is no longer open to doubt that by the legislation above referred to the refuse of New York City, when dumped in the ocean, is unlawfully disposed of, unless deposited within the limits defined and prescribed by the supervisor of the harbor. Randall v. United States, 107 Fed. 935, 47 C. C. A. 80; Jaycox v. United States, 107 Fed. 938, 47 C. C. A. 83. It does not follow that every deposit beyond the lawful limits entails punishment or penalty. The excuses advanced may be sufficient to avoid even pecuniary loss by the owners of tug or scow

or both; but the illegality of the dumping is unaffected by the validity of the excuse. The questions at bar flow from the language of section 3 as amended, declaring that:

"Neither defect in machinery nor avoidable accidents to scows or towboats, nor unfavorable weather, nor improper handling or moving of scows or boats of any kind whatsoever, shall operate to release the owners and masters and employés of scows and towboats from the penalties hereinbefore mentioned."

1. Where scow 28 dumped is a question of fact, as to which we should not disturb the finding below, if in our opinion it rested upon really conflicting evidence; i. e., balanced contradictory and irreconcilable statements, each separate statement being possible. The F. B. Squire, 248 Fed. at page 470, 160 C. C. A. 479.

In this case, however, we are unable to find that the definite, careful and credible statements of the government inspectors are contradicted at all. Claimant's case is an argument that, because the tug had been out so long, she must have gotten further away from Scotland Light at the time of dumping than the distance observed by the men whose business it was to impartially note just such occurrences. We therefore hold that the scow was relieved of her load before she got to the dumping ground.

2. In The J. Rich Steers, 228 Fed. 319, 142 C. C. A. 611, we considered the meaning of the statutory phrase "avoidable accidents," and held that to establish the defense of unavoidable accident it was necessary to show the precise defect causing damage, and that the party proceeded against "was not wanting in any lack of ordinary care in relation to it, or else to show all possible causes and that the defendant was not wanting in ordinary care as to any one of them." This, as the citations made sufficiently showed, was an identification of the defense of unavoidable accident under this statute with that of inevitable accident so often raised in admiralty proceedings, and as to which our most recent holding is In re Reichert Towing Line, 251 Fed. 214, —— C. C. A. ——.

The evidence here does not even attempt to comply with the standard there laid down. There is no evidence of recent inspection of the gasket, and abundant evidence that it is an appliance which needs frequent examination in order to avoid exactly what happened to the Columbia. We therefore infer negligence on the part of the tug from the nature of her breakdown.

3. While this dumping did not take place in a storm, we have no doubt that the scowmaster, lying in the trough of the sea and exposed to the wash of every wave, dumped his boat to save his life, or at least under a reasonable apprehension that he was in imminent and deadly peril.

In the sense above stated, the weather was unfavorable; but it cannot follow that the statutory penalty is avoided if such unfavorable weather, or the danger produced thereby, was not in a legal sense the proximate cause of the offensive dumping. (The foregoing assumes, but does not hold, that weather per se can be a good excuse.)

The evidence is uncontradicted that, had the tug continued to pull

and kept the scow out of the trough, there would have been no trouble. There was no increase of danger, no exposure to any new peril, that did not proximately result from the stoppage of the tug's engine. There was, therefore, no intervening act efficient to break the causal connection between the stoppage of the tug and the danger to the tow which produced an unlawful deposit of refuse at the bottom of the sea. Long Island, etc., Co. v. Killien, 67 Fed. at page 368, 14 C. C. A. 418; Muller v. Globe, etc., Co., 246 Fed. at page 762, 159 C. C. A. 61.

We find, therefore, an unlawful and unexcused dumping. If tug and scow were in different ownerships, questions might arise which have not been argued, and as to which we express no opinion; it is enough for present purposes that the claimant of both vessels proceeded against was, through some one or more of its servants and one or both of its vessels, guilty of an offense against the statutes.

Therefore without appraising blame or distributing liability as between tug and tow, it is ordered that the decree appealed from be reversed, without costs, and the cause remanded, with directions to enter a decree for the libelant in the sum of $250, with costs of the District Court.