## THE BOMBAY.[1]

### UNITED STATES v. THE BOMBAY.

#### (District Court, E. D. New York. June 4, 1891.)

ILLEGAL DUMPING—LIABILITY OF VESSEL—ACT OF JUNE 29, 1888.

Under the statute of June 29, 1888, (25 St. at Large, p. 209,) entitled "An act to prevent obstructive and injurious deposits within the harbor and adjacent waters of New York city, by dumping or otherwise, and to punish and prevent such offenses," a steam-ship from which ashes are dumped in an unlawful place, by firemen presumably acting under orders from some superior officer, is liable as having herself violated the law.

In Admiralty. Suit to recover a penalty.

*Jesse Johnson*, U. S. Dist. Atty.

*Convers & Kirlin*, (*Mr. Kirlin*, of counsel,) for the Bombay.

BENEDICT, J. This is a proceeding *in rem* to charge the steam-ship Bombay with a fine for dumping ashes in the lower bay of the harbor of New York. It is taken under the statute of the United States passed June 29, 1888, (25 St. at Large, p. 209,) entitled "An act to prevent obstructive and injurious deposits within the harbor and adjacent waters of New York city, by dumping or otherwise, and to punish and prevent such offenses." The libel in the first article charges that on the 8th day of October, 1889, the master of the steamer Bombay, being on board and in command of her, did unlawfully deposit ashes and cinders in the tidal waters of the harbor of New York, in violation of the provisions of the statute above referred to. In the second article the libel charges that the ashes and cinders deposited as aforesaid were brought and carried to said place where they were dumped in and by the steam-ship Bombay, and the said steamer was then and there used and employed in violating the provisions of the statute aforesaid. By the second section of the statute referred to it is made a misdemeanor, punishable by fine and imprisonment, for any person to be engaged in, or aiding or abetting, or otherwise instigating, the deposit or discharge of ashes or cinders in the tidal waters of the harbor of New York; and the last clause of the fourth section of the statute declares that "any boat or vessel used or employed in violating any provision of this act shall be liable to the pecuniary penalties imposed thereby, and may be proceeded against summarily, by way of libel, in any district court of the United States having jurisdiction thereof." The answer raises two issues: *First*, whether the violation of the act set forth in the libel was committed by the master of the steam-ship, or authorized or instigated by him, as charged; *second*, whether the steamer was used or employed in that violation, within the meaning of the statute.

It appears in evidence that while the steamer Bombay was proceeding through the harbor of New York on a voyage from New York to Baltimore, in the pursuit of her calling, which was that of a common carrier

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

of merchandise, she was observed by persons on board a United States dredge-boat to be dumping ashes from a shute, which ran from the main deck of the steamer through the bulwarks on the starboard side. The steamer being hailed by those on board the dredge when she arrived opposite the dredge, the flow of ashes at once ceased. The steamer was running at slow speed, and ashes were seen to be running from the shute during a space of some two and a half miles. The explanation of this violation of law given by those in charge of the steamer is that the ashes were put out by two firemen, who acted without authority. In support of this defense testimony is produced to show that in putting out the ashes the firemen acted without orders from the master, the chief mate, or the first or second engineers of the steamer. All of these officers have testified, and each for himself says, that he gave no orders to the firemen to put out the ashes, and had no knowledge that ashes were being put out until the hail from the dredge. The evidence, therefore, fails to sustain the allegations of the first article of the libel, because it is not made to appear that the act of the firemen in dumping ashes was commanded by the master of the ship, as charged. The libel, however, may be amended to conform to the facts by stating "that ashes were transported in the steamer to the place where they were dumped, and that at that place were cast from the steamer into the tidal waters of the harbor of New York by some of the persons composing the crew of the ship." Considering the libel as amended to conform to the facts, the question is raised whether, upon the evidence, the vessel can be subjected to a fine, under the statute. The intention of the statute seems to me to be "that the vessel is to be considered and treated as itself violating the statute," (*The Strathairly*, 124 U. S. 571, 8 Sup. Ct. Rep. 609,) when the vessel is the instrument by means of which the violation of the statute is accomplished. Such legislation is not infrequent. It conforms to that feature of the maritime law which makes the ship liable for collision caused by the act of a seaman done, it may be, in violation of orders; liable to forfeiture for goods smuggled by means of her; liable for negligent navigating by a pilot compulsorily in charge of her. If that be the intent of the statute, I do not see why this case is not within it. The ashes that were dumped into the water of the lower bay were transported to the place of dumping by the Bombay. They were there cast into the water from the Bombay, and the persons who cast them overboard were part of the crew of the steamer engaged at the time in her navigation, and, one of the incidents of the navigation of a steamer being to dump the ashes created by the furnaces, the steamer therefore was used in violating the law. But it is said the use made of the steamer in committing the offense in question was without the knowledge or assent of her owners or her officers, and for that reason cannot subject her to a fine. Assuming, but not deciding, that in a case where ashes were unlawfully dumped by a tort-feasor no liability would attach to the ship, the question still remains whether, in a case like the present, the steamer is not liable. In this case the presumption certainly is that the ashes dumped overboard from this steamer were so dumped by order of some

of the persons in authority on board the ship. Firemen do **not volunteer** to do labor of this character. The burden is therefore upon the ship to overcome this presumption. Accordingly, the testimony of the master, the chief officer, and the first and second engineers has been produced in behalf of the steamer. The master and the chief officer, each for himself, says that he had no knowledge of the fact that ashes were being dumped from the ship until the hail from the dredge; that he had given no orders to dump ashes; and that it was contrary to the rule of the ship to dump ashes at that place. The first and second engineers, each for himself, says that he gave no orders to dump ashes, and did not hear that ashes had been dumped until the seizure of the vessel on her return to New York. The testimony for the claimant shows, in addition, that the persons who dumped the ashes were firemen; but the names of the firemen are not given. There is nothing in the testimony to indicate that any efforts were made by the officers of the ship to obtain their names, nor does it appear that any effort was made to ascertain, at the time of the transaction, how it came about that these firemen dumped the ashes as they did. The claimants rely upon the simple assertion of the master and chief officers and the first and second engineers that they had nothing whatever to do with the dumping of the ashes, nor any knowledge that the ashes were being dumped, to overcome the strong presumption that the firemen did not undertake the unpleasant duty of dumping ashes without the orders of some one entitled to command them. While it is, of course, possible for firemen to dump ashes without orders, it is highly improbable that firemen would do so. The presumption of orders is so strong that conclusive evidence is required to rebut it, and, in my opinion, it has not been overcome in this case by the testimony that has been produced from the officers of the ship, when that testimony is taken in connection with the acknowledged facts that the names of the offenders were not taken, nor any investigation had as to the circumstances attending the dumping of the ashes, (which, if done without orders, was a serious breach of ship's discipline,) nor any effort made to procure the testimony of the firemen. It is said the firemen left the ship in Baltimore, but that fact does not prove the impossibility of procuring their testimony. It must be also noticed in this connection that neither the third nor fourth engineers are produced as witnesses. The chief engineer indeed testified that the third and fourth engineers had no authority to direct ashes to be dumped; but the third and fourth engineers were officers of the ship superior to the firemen, and their orders to the firemen to dump ashes, although given in excess of authority, would be obeyed by firemen, and dumping ashes by the firemen under orders from the third and fourth engineers, in the absence of notice of want of authority to give such an order, if acted upon by the firemen, would, in my opinion, make the act of the firemen the act of the ship, within the meaning of this statute. Still further, the second mate, who presumably was responsible for doings on the ship's deck at the time the ashes were dumped, is not called as a witness, nor his absence accounted for.

The case, then, I find to be this: that ashes were dumped in an unlawful place from the deck of an ocean steamer by her firemen, presumably acting under orders from some superior officer of the steamer; the steamer at the time being engaged in performing a freighting voyage to sea, and the dumping of the ashes accumulated at her furnaces being a necessary incident to her navigation. In such a case my opinion is that the statute takes effect, and renders the steamer liable as having herself violated the law. This conclusion, as I conceive, is not at variance with the decision rendered by Judge GREEN in the case of *The Anjer Head*, 46 Fed. Rep. 664. That case came before the court upon an admission of fact. The fact admitted was that "an employe on board the steamer did throw overboard a single scuttle of ashes." It did not appear in that case that the employe who emptied the scuttle was one of the crew of the steamer, or that the emptying of the scuttle of ashes was a necessary incident to the navigation of the ship, or that the emptying of the scuttle was directed by some officer of the ship. The presumption of orders scarcely arises in the case of a chamber-maid, who, while lighting a fire, has occasion to empty the scuttle of ashes, or of a passenger on board a steamer who knocks the ashes out of his pipe into the tidal waters of New York harbor. Such cases differ from the present, in this: that here the ashes were dumped by firemen, part of the crew of the ship, whose duty it was to clear away ashes created by the furnaces, and who in dumping the ashes presumably acted under the orders of an officer of the ship, given in furtherance of the navigation of the ship. In such a case, it seems to me that the ship, so used to dump ashes in an unlawful place by persons authorized to dump her ashes, is used and employed in violating the law, within the meaning of the statute.

It was contended in argument that in the case of *The Anjer Head* the decision was that under this statute it must appear that the ship was devoted by her owners to the business of dumping ashes before the ship could be held liable; in other words, that the act applied to dumping scows only, and not to steamers engaged in transporting freight and passengers through the harbor of New York. But I do not understand the decision in that case to go to that length. Such a decision would render the statute inoperative to remedy one of the serious evils intended to be reached,—namely, the dumping of ashes from steamers in the lower bay. The steamer Bombay, having thus been found to have been used in violating the provisions contained in the first section of the statute above referred to, is by that statute made liable to the pecuniary penalty provided by that section, which is a fine of not less than $250 nor more than $2,500. It will be sufficient, I conceive, to fix the amount of her liability at the lowest figure permitted by the statute, and it is accordingly fixed at the sum of $250.

Let a decree be entered, condemning the steamer in the sum of $250 and costs, and ordering that a decree be entered against the stipulators for such, in accordance with the practice of the court.