## THE COLOMBO.
### No. 326.

Circuit Court of Appeals, Second Circuit.
May 12, 1930.

Charles H. Tuttle, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Gilbert & Gilbert, of New York City (Abram S. Gilbert, of New York City, of counsel), for appellee.·

Before L. HAND, CHASE, and MACK, Circuit Judges.

## PER CURIAM.

The Colombo was an oil-burning steamer lying in the Hudson river at the foot of West Fifty-Seventh street, New York. A fuel barge lay alongside to fill her eighteen tanks. This could be done through either of two intake valves, forward and aft, each leading into a common duct which in turn fed the separate tanks. When one valve was in use, the other must be closed, else some of the oil· would pass along the duct and leak out of the unused valve. The barge had pumped oil into the after valve in the morning and moved forward to the fore valve, where it began to pump again. The seaman detailed to close the after valve after the barge left failed to do so completely, and as the barge pumped, some four or five barrels of oil leaked through it before the loss was discovered. This was the cause of suit laid.

Section 441 (33 USCA) speaks of discharging "refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind, other than that flowing from streets, sewers, and passing therefrom· in a liquid state." In 1888, when it was passed, oil-burning steamers were not known, and it was almost certainly for this reason that oil was not specifically included, for in recent years this has become a great nuisance and a serious danger to the harbor. "Sludge" scarcely covers oil, but the general language with which the clause concludes is verbally broad enough to include it, and, if read ejusdem generis, leaves no fair doubt. Warner-Quinlan Co. v. U. S., 273 F. 503 (C. C. A. 3).

Section 444, passed in 1894, makes liable even the master and engineer of a tug which tows an offending scow, and strictly limits the excuses which shall be accepted. It has been broadly construed. Jaycox v. U. S., 107 F. 938 (C. C. A. 2); Randall v. U. S., 107 F. 935 (C. C. A. 2); The J. Rich Steers, 228 F.

319 (C. C. A. 2); The Columbia, 255 F. 515 (C. C. A. 2); U. S. v. Various Tugs & Scows (D. C.) 225 F. 505. There can be no doubt that in the case at bar at least the seaman detailed to watch the after valve was "engaged in" the discharge of the oil, and liable to the penalty.

At one time it was thought that section 450, which makes any vessel liable when "used or employed" in such work, was limited to those whose owners or masters had authorized the wrongful act (The Anjer Head [D. C.] 46 F. 664), but this was soon overruled (The Bombay [D. C.] 46 F. 665), and we have already once approved the later construction (The J. Rich Steers [C. C. A.] 228 F. 319, 322). The statute speaks with the maritime law in mind, under which the ship is so often regarded as an offender. This is indeed a fiction, but its roots go back far into the law, and the resulting liability is like many others imposed upon an individual, regardless of his personal fault. Having committed his ship to the seas, an owner takes the risk of much which he cannot easily control. As between him and the injured party, it is thought desirable to throw the loss where prevention would have been at least possible.

The minimum penalty is ample here; the offense was not deliberate; it did small damage and cost the ship her oil.

Decree reversed, and fine of $250 imposed.