101 F.2d 638 (1939)
THE PRESIDENT COOLIDGE.
DOLLAR S. S. CO.
v.
UNITED STATES.
No. 8846.
Circuit Court of Appeals, Ninth Circuit.
January 23, 1939.
Thompson, Wood & Russell, of Honolulu, T. H., and Keith R. Ferguson, of San Francisco, Cal., for appellant.
Ingram M. Stainback, U. S. Atty., and J. Frank McLaughlin, Asst. U. S. Atty., both of Honolulu, T. H., and Frank J. Hennessy, U. S. Atty., and Robert B. McWilliams, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.
Before WILBUR, GARRECHT, and HANEY, Circuit Judges.
GARRECHT, Circuit Judge.
The Act of March 3, 1899, 30 Stat. 1152, § 13, 33 U.S.C.A. § 407, makes it unlawful "to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, * * * any refuse matter of any kind or description whatever * * into any navigable water of the United States, * * *." It is further provided, 30 Stat. 1153, § 16, 33 U.S.C.A. § 411, that every person or corporation who violates the above statute is guilty of a misdemeanor punishable by fine or imprisonment or both, and the same enactment (33 U.S. C.A. § 412) makes liable any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of the act set forth above.
From a decree assessing a penalty of $500 and costs against the appellant, as libelee of the steamship "President Coolidge," etc., for violation of the above statute, this appeal is taken.
The facts giving rise to the proceeding are as follows:
The steamship "President Coolidge" arrived in the habor of Honolulu August 26, 1937, and tied up at pier 8. At about the hour of 10 a. m. of that day, one Norman R. Arthur, a harbor patrol boatman under the United States District Engineer, was passing under the stern of the "President Coolidge" in a patrol boat, when a quantity of garbage, consisting of cabbage, orange peel, celery, tea leaves, and water, descended upon him, part thereof falling in the water. Arthur's official duties included patrolling the Honolulu harbor to prevent or apprehend persons throwing rubbish of any nature into the waters of the harbor. Immediately following his being drenched with the refuse, Arthur cleared his eyes, then looked and saw a person, apparently Chinese, walking away from the stern rail of the Coolidge, carrying a can or bucket. There was one witness to the incident, a member of the United States Coast Guard assigned to Pier 7 to watch for things being thrown from the Coolidge. This witness said he did not see the refuse thrown, but saw it hit Arthur; he would not say that he saw any of it hit the water. Arthur fastened his small boat to the pier, changed clothes and boarded the "President Coolidge" to make a search for the person responsible. He saw the chief mate and explained what had happened and the officer conducted an investigation, but no further information was secured.
There was testimony on behalf of the claimant that orders had been issued by the Company against throwing of refuse from the ship while in harbor; that signs were placed in conspicuous places written in English and Chinese, warning employees not to throw things overboard; that locks *639 were placed upon the slop chutes to prevent their use while in harbor; that the officers of the ship had no knowledge of violation of the law or their orders in this respect and in this instance.
There seems to be no contention upon the part of the appellee that the appellant was unmindful of its duty to obey the statute in question. Concededly, the appellant took precautions to the end that the law be not violated.
Under its assignment of errors the appellant urges two points, (1) "the falling of refuse matter into a boat does not constitute a throwing into navigable waters.", and (2) the throwing of refuse matter into the harbor contrary to express orders of the owners and officers of a vessel, without their knowledge, does not constitute a use or employment of the vessel in violation of the Act.
On the first question: Arthur testified that the garbage fell into the water, as well as on the small boat, and that he saw it floating 20 odd feet directly astern of the "President Coolidge" within a very few minutes of the actual throwing thereof. The court found "That on August 26, 1937, there was thrown from the Steamship `President Coolidge' into the navigable waters of said Honolulu Harbor garbage consisting in part of orange skins, celery, and tea leaves." Arthur's testimony is not so improbable as to be utterly unworthy of belief, and we would not be justified in setting aside the finding of the court below based thereon. It must be taken as a fact, therefore, that garbage thrown from the stern of the "President Coolidge" fell upon the navigable waters of the harbor of Honolulu.
It being conceded by the appellee that the appellant had issued orders to its officers and that they in turn had issued orders to the crew, forbidding just such a throwing of refuse as here found, we assume that the appellant was reasonably careful that the statute be not violated, and did not intend to violate it.
The case then is merely a technical violation of the law and the question to be determined is, Does the lack of intent to violate the statute relieve the appellant from liability?
Section 13 of the statute makes it unlawful to do the act complained of; section 16 thereof sets the punishment or penalty, and makes liable any boat or vessel used and employed in violating said section.
In construing a similar statute, the Circuit Court of Appeals for the Second Circuit said, in the Colombo, 42 F.2d 211, 212:
"At one time it was thought that section 450 [33 U.S.C.A.], which makes any vessel liable when `used or employed' in such work, was limited to those whose owners or masters had authorized the wrongful act (The Anjer Head (D.C.) 46 F. 664), but this was soon overruled (The Bombay (D.C.) 46 F. 665), and we have already once approved the latter construction (The J. Rich Steers (C.C.A. [2 Cir.]) 228 F. 319, 322). The statute speaks with the maritime law in mind, under which the ship is so often regarded as an offender. This is indeed a fiction, but its roots go back far into the law, and the resulting liability is like many others imposed upon an individual, regardless of his personal fault. Having committed his ship to the seas, an owner takes the risk of much which he cannot easily control. As between him and the injured party, it is thought desirable to throw the loss where prevention would have been at least possible."
Hegglund v. United States, 5 Cir., 100 F.2d 68, decided November 22, 1938, involved an interpretation of the Oil Pollution Act of June 7, 1924, 33 U.S.C.A. § 431, et seq. Hegglund, the appellant, was master of the steamship "Bidwell," out of which oil leaked under the water line while she was taking on oil. Hegglund was sentenced to pay a minimum fine and he appealed. Among other things, the Circuit Court of Appeals said [page 69]:
"* * * Oil upon the waters is as harmful if its presence be due to inattention as if due to design. The language of the Act is broad enough to protect against both cases. The words: `It shall be unlawful for any person to discharge * * oil * * * into or upon the coastal navigable waters of the United States from any vessel using oil as fuel * * * or * * * carrying or having oil thereon in excess of that necessary for its lubricating requirements', would easily and naturally refer to voluntary acts of discharge, and might be restricted to such. But the words are added: `or suffer, or permit the discharge of oil by any method, means or manner'. Remembering the tendency of oil to discharge itself at every opportunity, *640 these sweeping words seem intended to require vigilance and foresight to prevent it. An escape of oil which could have been foreseen and prevented is a discharge suffered or permitted within the intent of the Act. * * *"
The foregoing decisions are sufficient answer, we think, to the contentions made by appellant. The Anjer Head, D.C., 46 F. 664, relied upon by appellant, is at variance with the decision immediately following in the same volume, The Bombay, D. C., 46 F. 665, and was expressly overruled by The Colombo, supra (which reversed, D.C., 28 F.2d 1004, also cited by appellant).
The appellant failed to prevent the commission of the forbidden act. Though apparently unintentional there nevertheless was a technical violation of the Act and for this the minimum fine was imposed. This "resulting liability is like many others imposed upon an individual, regardless of his personal fault. Having committed his ship to the seas, an owner takes the risk of much which he cannot easily control." Any other construction would change the statute from one of prohibition to that requiring merely due care.
Affirmed.