**UNITED STATES of America,
Plaintiff,**

v.

**VULCAN MATERIALS COMPANY,
a corporation, Defendant,
(two cases).**

**UNITED STATES of America,
Plaintiff,**

v.

**VERONA–PHARMA CHEMICAL COR-
PORATION, a corporation,
Defendant.**

Crim. Nos. 24–70, 196–70, 32–70.

United States District Court,
D. New Jersey.

Sept. 24, 1970.

Stryker, Tams & Dill, by Walter F. Waldau, Newark, N. J., for defendants.

Frederick B. Lacey, U. S. Atty., by Jerome D. Schwitzer, Asst. U. S. Atty., for the United States.

## OPINION

WHIPPLE, District Judge.

Defendants, Verona Corporation (hereinafter Verona) and Vulcan Materials Company (hereinafter Vulcan) are corporations operating manufacturing plants on the Kill Van Kull and Newark Bay. For several years the defendant corporations have been discharging waste acid, alkaline and oil into these waters which constitute a part of the New York Harbor. Criminal proceedings have been previously brought against Verona for specific violations prohibiting pollution which resulted in a conviction in December 1967. Failure on the part of these defendants to cease polluting the harbor waters prompted the filing of criminal informations for offenses committed in the past year. Specifically, the three informations charge that on thirteen separate occasions these defendants discharged into the waters of New York Harbor acid, alkaline and oil waste and refuse in violation of 33 U.S.C. § 441. This statute provides:

"The placing, discharging, or depositing, by any process or in any manner, of refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind, other than that flowing from streets, sewers, and passing therefrom in a liquid state, in the tidal waters of the harbor of New York * * * is strictly forbidden * * *."

The defendants have moved to dismiss the informations on various grounds:

▮ (1) It is contended that the informations fail to state an offense. Defendants urge that their discharges were within the statute's proviso language, i. e., all of the substances discharged were liquids and entered the water by way of a piped sewer line, and that such discharges are expressly permitted by the proviso language of the statute. Secondly, the defendants urge that their discharges are not within the prohibitions of the statute since the legislative history of the act indicates that Congress was concerned with deposits of bulky and insoluble substances in the harbor and that the harbor would become obstructed with shoals of refuse materials which would present a hazard to navigation. While defendants admit that their discharges may be polluting the waters of New York Harbor, they contend that 33 U.S.C. § 441 was not designed as an anti pollution statute, but on the contrary, was meant to be a navigational obstruction statute. They urge that concern for the problems of pollution cannot be permitted to override the intent of Congress in enacting the statute. Congress' concern, they argue, was with disruptions of shipping and harbor activity by the shoaling of refuse. They contend that substances which would not obstruct navigation were of no concern to Congress and therefore, Congress authorized an exemption for fluid waste from streets and sewers. On these grounds the defendants urge that the government has failed to state a violation of the New York Harbor Act and therefore, the information should be dismissed.

The government contends that the word "sewer," as used in the statute's except clause has been defined by the courts and does not have the broad connotation the defendants place on it. The Supreme Court in United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960) held that "refuse flowing from 'sewers' in a 'liquid state'" means sewage which essentially involves organic matter, which will eventually decompose. However, the acid, alkaline and oil waste and refuse, as in the case at bar, do not decompose and are not sewage. The government also points out that while water pollution was not a paramount concern of Congress in 1888 when § 441 was originally enacted, Congress, through a 1958 amendment, made it clear that § 441 should be used to alleviate the devastating effect of water pollution on our environment. The Senate Report which accompanied the amendment referred to oil pollution as being a principal problem and dangerous to navigation and an interference with the beaches normally used for recreational purposes. There is no doubt that the discharge of acid, alkaline and oil waste and refuse, in addition to polluting the harbor, has a highly injurious effect upon ships and docks as well as on the fish and animal life therein. The action of the defendants, if continued, would only add to the deterioration of the harbor facilities and would certainly diminish and obstruct the usefulness of the New York Harbor. Finally, it should be noted, the discharging of oil into New York Harbor has consistently been held to be a violation of 33 U.S.C. § 441. The Albania, 30 F.2d 727 (S.D.N.Y.1928); The Columbo, 42 F.2d 211 (2d Cir. 1930); The S.S. Nea Hellis, 116 F.2d 803 (2d Cir. 1941).

■ (2) The defendants urge the dismissal of the informations contending that the statute under which they are being prosecuted (New York Harbor Act) has been impliedly repealed by the Federal Water Pollution Control Act, 33 U.S.C. § 466 et seq. They contend that Congress has developed a comprehensive legislative plan for dealing with the problems of pollution and has enacted this and other similar acts to this end. Any direct application of the New York Harbor Act to pollution, according to the defendants, has been superseded by the newer legislation.

The Federal Water Pollution Control Act of 1956 authorized technical assistance, grants for state programs and construction subsidies by the Federal Government for municipal and state facilities. This Act does not provide for the criminal prosecution of polluters. Only abatement procedures are established and formulated under the terms and provisions of the Act. Thus, it becomes inconceivable that Congress intended to repeal the New York Harbor Act, a criminal statute, by implication, with a civil statute, as is urged by the defendants. Furthermore, it is noted, that the Federal Water Pollution Control Act specifically states that it "shall not be construed as (1) superseding or limiting the functions, under any other law, * * of any other officer or agency of the United States, relating to water pollution." It follows, therefore, that the contentions of the defendant in support of this ground are lacking in merit.

■ (3) The contention of the defendants is that if the New York Harbor Act is to be applied to water pollution, there will be an overlap and conflict with the more recent Federal Water Pollution Control Act of 1956, as amended. They urge that the New York Harbor Act be harmonized with the declared purposes of the more recent Act. This they contend would require the policies and purposes of the Federal Water Pollution Control Act being read in conjunction with the New York Harbor Act.

The Acts are completely separate and distinguishable. The intent and purpose of each statute is diametrically opposed to the other. One is civil; the other is criminal. One has given to the

states, with the assistance of the Federal Government, control of waterways within the states. The other concerns a particular body of water, the Harbor of New York, under the exclusive control of the Federal Government and its agencies.

The defendants also argue that it is procedurally unfair for the government to prosecute them criminally for the specific violations charged in the informations inasmuch as the State of New Jersey has also instituted civil proceedings against them and has extended the time for complying. The local civil proceedings instituted by the State have no bearing on the several separate and distinct criminal violations committed by the defendants and charged in these criminal informations.

Defendants assert that they have expended "millions to cure the problems at its plant by constructing a new facility in another area." This action on their part is not relevant to the pending criminal charges. That defendants have agreed with the State of New Jersey to move their plant to another state is no reason why criminal sanctions should not follow if criminal acts have been committed in this jurisdiction.

Defendants' final argument is that this criminal prosecution is unfair inasmuch as they have planned and are taking appropriate steps to remedy the water pollution problems that confront them. What the defendants plan on doing is, at best, speculative. Criminal prosecutions are predicated upon statutory violations and not on after-the-fact assurances of future good conduct. This argument is not persuasive.

The defendants' motion to dismiss the several criminal informations being without merit, is denied. Let an order in conformity with the foregoing opinion be submitted.